**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**TIFFINEY CLEAVES-MOORE and**
**TAMIKA NICHOLSON,**

**Plaintiffs,**

**v.** **Case No. 26-C-131**

**KIA AMERICA, INC., et al.,**

**Defendants and Third-Party Plaintiffs,**

**v.**

**JARONE CURTIS-BANKS and**
**JOHN DOE THIEF,**

**Third-Party Defendants.**

---

## DECISION AND ORDER DENYING KIA CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

---

Plaintiffs Tiffiney Cleaves-Moore and Tamika Nicholson brought this action against Defendants Kia America, Inc. (KA), and Kia Corporation (KC), as well as against other defendants, asserting claims of design defect and negligence under Wisconsin law. Plaintiffs were seriously injured when on separate occasions car thieves stole a 2021 Kia Sportage and a 2016 Kia Optima, fled from police in high-speed chases, and crashed into the vehicles Plaintiffs were driving and/or occupying. Plaintiffs claim that the Kia vehicles that struck them were defectively designed because of the lack of adequate theft-prevention features, such as car alarms, engine immobilizers, and robust steering columns with interlocking ignition systems, making theft of those vehicles easy and the resulting injuries to innocent parties entirely foreseeable. The case is now before the

court on KC's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, KC's motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

KC is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business in Seoul, South Korea. Dkt. No. 26 ¶¶ 5–6. KC has no offices in Wisconsin, employs no personnel in Wisconsin, has no agent for service of process in Wisconsin, and conducts no marketing in Wisconsin. *Id.* ¶ 8. KC designs and manufactures Kia-brand vehicles in the Republic of Korea. *Id.* ¶ 10.

According to the complaint, KA is "the American sales, marketing, and distribution arm of its parent corporation, Kia Corporate [sic], the Korean-based auto manufacturer." Dkt. No. 1-1 ¶ 36. KC sells certain vehicles it manufactures in the Republic of Korea to KA. Dkt. No. 26 ¶ 12. KA also manufactures several of the company's most popular models, including the Kia Optima, Sorento, and Telluride, at a manufacturing facility in West Point, Georgia. Dkt. No. 1-1 ¶ 39.

The Kia automobiles KC sells to KA are sold FOB (free on board) Origin from the Republic of Korea. KA then imports those automobiles into the United States and distributes those vehicles to independently owned dealerships throughout the United States. Dkt. No. 26 ¶¶ 12–13. KC does not advertise vehicles in Wisconsin, publish advertisements directed specifically to Wisconsin consumers, target marketing specifically to Wisconsin residents, or otherwise direct marketing activities toward Wisconsin. Nor does KC control KA's day-to-day sales, marketing, distribution, or dealership activities, including KA's relationships with dealerships located in Wisconsin. *Id.* ¶¶ 14–15. None of the alleged design, engineering, manufacturing, testing, or corporate decisions relating to the vehicles involved in this case were made by KC in Wisconsin. *Id.* ¶ 17.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "When the district court bases its determination solely on written materials and not an evidentiary hearing, plaintiffs must only make a prima facie showing of personal jurisdiction over the defendants to survive a motion to dismiss." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

In deciding whether personal jurisdiction exists, the court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *See Purdue*, 338 F.3d at 782. Any well-pleaded facts alleged in the complaint are accepted as true and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing *Purdue*, 338 F.3d at 782). Where the defendant submits affidavits or other evidence in opposition to the exercise of jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. "If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 884 (N.D. Ill. 2020) (citing *Purdue*, 338 F.3d at 783).

## ANALYSIS

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 782. Under Wisconsin law, a court must employ a two-step inquiry to determine whether personal jurisdiction may be exercised over a nonresident defendant. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 408–09, 629 N.W.2d 662, 667–68. The court first determines whether the defendant meets any of the criteria for personal jurisdiction under Wisconsin's long-arm statute. *Id.* ¶ 8. If the statutory requirement is satisfied, the court must then examine whether the exercise of jurisdiction comports with the requirements of due process. *Id.*

As relevant here, Wisconsin's long arm statute confers personal jurisdiction over a defendant "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, . . . [p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade." Wis. Stat. § 801.05(4)(b). It is not clear whether KC manufactured the vehicles at issue in this case. But because KC is the parent corporation, it is reasonable to infer that KC is responsible for the design, including the decision not to include the anti-theft features that are at the center of the case. KA manufactures some Kia models in the United States, but there is no suggestion that KA altered the design that the parent corporation created for the vehicles it manufactured in this country. Donghee Han, Counsel for KC, states in the declaration filed in support of its motion to dismiss only that "[a]ny alleged design, engineering, manufacturing, testing, or corporate decisions relating to those vehicles were not made by KC in Wisconsin." Dkt. No. 26 ¶ 17. He does not deny that those actions or decisions were made by KC, however.

Of course, if KC manufactured either vehicle, this would be enough to satisfy § 801.05(4)(b). The complaint alleges Plaintiffs suffered serious injury in Wisconsin as a result of the design defects in the Kia vehicles as they were being used in the state in the ordinary course of trade. But even if KC did not manufacture either vehicle, the statutory criteria would still be met. KC's authorization of KA to manufacture its vehicles in the United States which were then sold nationwide, including in Wisconsin, combined with the injuries allegedly caused in Wisconsin by that design, is sufficient to meet the conditions of the statute. The vehicles at issue are Kia products, and the actions or inactions of KC in authorizing the manufacture of those vehicles without including the theft prevention features allegedly caused the injuries that occurred in this state. Moreover, KC itself manufactures vehicles that are shipped to various states and, given the inherent mobility of automobiles, it would have known its vehicles would be used throughout the country, including within this state, in the ordinary course of trade. *See In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, ___ F.4th ____, 2026 WL 2683536, at *3 (9th Cir. Sept. 14, 2026) (noting that "approximately 77 percent of KC's shipments to the United States were sent to California ports"). The first step of the inquiry required under Wisconsin law is therefore met.

The court must next consider whether due process allows the exercise of such jurisdiction. Personal jurisdiction can be either general or specific. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Plaintiffs do not argue that this court has general jurisdiction, so specific jurisdiction alone is at issue. For a court to exercise specific jurisdiction over a defendant, a plaintiff must show that the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

These "minimum contacts" must arise from "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Applying these principles in a products liability suit against a vehicle manufacturer, the Supreme Court held in *World-Wide Volkswagen Corp. v. Woodson* that the foreseeability that a product might be brought into the forum state was insufficient to provide a court with jurisdiction over the manufacturer. 444 U.S. 286, 295–96 (1980). The Court nonetheless held that personal jurisdiction does exist over a "corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297–98.

KC quotes the plurality opinions in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), and *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), in support of its contention that it lacks sufficient contact with Wisconsin to satisfy due process. In *Asahi*, a plurality of the Supreme Court stated that a defendant manufacturer must "purposefully direct[] its activity toward the forum State" in order to be subject to personal jurisdiction. 480 U.S. at 112. In contrast to the plurality's view, Justice Brennan's concurrence endorsed finding personal jurisdiction as long as the defendant manufacturer "is aware that the final product is being marketed in the forum State." *Id.* at 117 (Brennan, J., concurring). A similarly divided Court decided *Nicastro*, where four Justices followed the *Asahi* plurality, and four Justices declined to do so, resulting in a non-precedential decision. 564 U.S. at 910 (Ginsburg, J., dissenting).

The Seventh Circuit has applied Justice Brennan's approach in products liability cases. *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) ("We apply a

'knowledge' version of the stream-of-commerce theory, rather than a 'targeting' version."). KC's argument, therefore, is flawed insofar as it relies on the more stringent "targeting" test of the plurality opinions in *Asahi* and *Nicastro*, rather than the "knowledge" test endorsed by Justice Brennan. In *B.D.*, the Seventh Circuit held that factors relevant to a personal jurisdiction analysis included whether the defendant manufacturer was aware that its products reached consumers in the forum state, whether it expected its products to do so, and whether it controlled the distribution of its products in the state. *Id.* at 863.

KC's declaration states that it "does not control the distribution of the vehicles that are the subject of this lawsuit within Wisconsin." Dkt. No. 26 at 3. But while *B.D.* held that a defendant manufacturer's control over the distribution of its products is relevant to an inquiry regarding minimal contacts for purposes of specific personal jurisdiction, *see* 91 F.4th at 863, the court's discussion of the knowledge and expectations of the defendant demonstrates that an absence of control by the defendant does not conclusively show that there is no personal jurisdiction over the defendant. Rather a court must also consider the defendant's knowledge and expectations regarding the final destination of its products. *Id.*

KC argues that "[t]here is simply nothing in the record demonstrating any awareness" by KC that its vehicles would be sold in Wisconsin. Dkt. No. 35 at 4. But this contradicts KC's own admission that it sells vehicles to KA, which then "distributes those vehicles to independently owned dealerships *throughout the United States*." Dkt. No. 26 at 3 (emphasis added). KC offers no reason why it should believe that Wisconsin in particular is excluded from the nationwide scope of KA's sales.

KC cites *World-Wide Volkswagen* for the proposition that the "mere likelihood that a product will find its way into the forum State" is not enough to create personal jurisdiction over a

defendant manufacturer. Dkt. No. 25 at 9 (citing *World-Wide Volkswagen*, 444 U.S. at 297). The Supreme Court in that case, however, went on to explain that the exercise of personal jurisdiction is permissible when the sale of a product in the forum state "is not simply an isolated occurrence," but is performed by a defendant "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297–98. The Court further observed that the market for the vehicles in question was limited to three states, and that there was "no evidence of record that any automobiles distributed by World-Wide are sold to retail customers outside this tristate area." *Id.* at 298. As explained above, KA's nationwide sales clearly distinguish this case from *World-Wide Volkswagen*.

Finally, the court notes that even under the more stringent test of the *Asahi* plurality, the Ninth Circuit recently concluded that similar allegations in the master complaint filed in the multidistrict litigation against KC and Hyundai Motor Company (HMC), another Korean manufacturer of motor vehicles, by the subrogated insurers, whose insureds suffered covered losses resulting from the theft of their Kia and Hyundai automobiles, were sufficient to establish personal jurisdiction over KC and HMC in California. The court concluded that "plaintiffs' complaint, taken as a whole, plausibly alleges that the Korean entities satisfy the purposeful availment and direction tests." *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2026 WL 2683536, at *5. "[T]he combination of the Korean entities' shipments to California ports and U.S.-specific design demonstrates that defendants purposefully reached out beyond their home to deliberately exploit a market in the forum State." *Id.* at *6 (citation modified).

## CONCLUSION

The complaint alleges that Plaintiffs were injured in Wisconsin as a result of KC's acts or omissions outside of Wisconsin. Because KC manufactures automobiles that are used within the State of Wisconsin in the ordinary course of trade and KC had reason to know that its products would be used in Wisconsin, this court has personal jurisdiction over KC. KC's motion to dismiss for lack of personal jurisdiction (Dkt. No. 24) is therefore **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 5th day of October, 2026.

William C. Griesbach
United States District Judge